## MOORMAN et v ROOKSTOOL

Ohio Appeals, 2nd Dist, Montgomery Co

No 1165.   Decided Feb 7, 1934

M. E. Schlafman, Dayton, for plaintiff in error.

Jacobson & Durst, Dayton, for defendant in error.

**OPINION**

By BARNES, J.

The controverted question can be best understood by a rather full narrative . in chronological order of the pertinent facts. On July 16, 1928, Dr. Urich purchased from the plaintiff an automobile for the consideration of $1405; a used car was traded in at an accepted value of $505 and the balance of the consideration amounting to $900 taken care of by a note payable in 90 days. The order contained the following memorandum "with renewal privileges." At the .end of the 90 days Dr. Urich was not able to pay the note although he did pay the accrued interest. At the suggestion of the Motor Car Company a new arrangement was entered into through which Dr. Urich took up the old note and executed a chattel mortgage on the car and a new note for the sum of $1044. Under the terms of the note it was payable $87 per month for a period of 12 months. It was understood that the Motor Company was intending to negotiate the note to the Colonial Finance Company and the charges would amount to the sum of $144. The Motor Company agreed to pay the finance charges and they did so pay. The only amount to be paid by Dr. Urich was the $900 plus interest. During the year he only paid $15, which was credited upon interest. The note and mortgage was duly assigned to the Colonial Finance Company immediately after its execution. As the monthly payments came due Dr. Urich was unable to pay them and so the Motor Company made the monthly payments. Dr. Urich claims that this was in accordance with their oral agreement and that as he would receive the monthly statements from the Colonial Finance Company he would turn them over to the Motor Company for payment. Mr. Charles Moorman of the Motor Car Company and the individual who had the negotiations with Dr. Urich testifies somewhat differently as to the circumstances under which his company made the payments. He testifies that after the expiration of the first month they took care of that payment as an accommodation to Dr. Urich and thereafter continued to pay from month to month when it would develop that the doctor was not in position to make payment. This procedure continued until they had made 10 payments or a total of $870. Sometime in September 1930 Mr. Moorman of the Motor Car Company asked Dr. Urich to give them a new note with personal security. This the doctor agreed to do and the note was drawn up dated September 28, 1930 and handed to the doctor for execution by himself and his proposed security. The doctor says that he held this note for something like two weeks more or less before he procured the signa-

ture of Carl ·Rookstool and immediately thereafter returned it to the Motor Car Company. Mr. Charles Moorman thinks it was a longer period of time, possibly three or four weeks. This difference in their remembrance is of little consequence. This note was made out for $1150 and included therein was $202 covering another item than the amount due on the automobile plus interest. The year's interest on the automobile amounted to $63 and $15 of this had been paid by Dr. Urich leaving a balance of principal and interest of $948. There is some difference in the testimony as to the $202 item. It was the testimony of Dr. Urich that the Colonial Finance Company held a chattel mortgage against his furniture in that amount and that the Motor Car Company was intending to negotiate the $1150 note at the bank and out of the proceeds pay off the· $202 mortgage and thus put him in better position to start paying off the note obligation. It was the testimony of Mr. Moorman, rather indefinite, that the $202 covered some commission or interest allowances. Again this difference is of little materiality for the reason that on October 6, 1930 a credit of $202 was indorsed on the note thus leaving only $948 which it is agreed Dr. Urich owed at that time. Dr. Urich testified further that Mr. Moorman informed him that they were not able to negotiate the note at the bank and for that reason could not take up the chattel mortgage on his furniture. At the time of the execution of the $1150 note on September 28 the chattel mortgage and note held by the Colonial Finance Company was not returned to Dr. Urich. So far as the evidence discloses it was not mentioned at that time. The plaintiff, Motor Car Company identified and introduced in evidence 12 checks representing the monthly payments to the Colonial Finance Company. The last of the 10 totalling the $870 was paid on September 5, 1930. The last two payments being $87 each was paid October 17 and November 29, 1930. The mortgage was cancelled December 16, 1930. Mr. Charles Moorman says that he delivered the note and mortgage to Dr. Urich not later than December 1930. Dr. Urich testifies that the same was never delivered to him at all, nor did he ever ask for it. Mr. Moorman says that they agreed to take up the last two monthly payments and present evidence conclusively showing that they did so. Dr. Urich says that the arrangement was made at the time of the execution of the mortgage and the note secured thereby. There is some discrepancy in the evidence between Mr. Charles Moor-

man and Dr. Urich as to what was said at the time and immediately preceding the procuring of the note which was signed by Carl Rookstool. Mr. Moorman says that he told Dr. Urich that unless he could give him a new note with personal security that it would be necessary to bring suit to collect what was owing; Dr. Urich denies that there was any statement made about bringing suit and further that Moorman said to him that they desired the note with personal security so that they might negotiate it at the bank. There are some other differences of minor character but we are unable to see that any of these are of vital importance. It is true that a threat to sue may sometimes be the only consideration covering an executed note. This frequently happens where there is a disputed claim and settlement is made through the execution of a note in order to avoid litigation. In the instant case there is not a dispute as to the claim or the amount. Apparently the trial court based its decision very largely on the difference of testimony between Charles Moorman and Dr. Urich on the question of the threat to sue. It was Dr. Urich's contention that the stated purpose was in order that the Motor Car Company might rediscount the note at the bank. In our judgment this matter becomes immaterial in view of the fact that there is another element in the case supporting the necessary consideration and that is the execution of this note in payment of a pre-existing debt. This is a direct provision of §8130 GC, the last paragraph of which reads as follows:

"An antecedent or pre-existing debt constitutes value; and is deemed such whether the instrument is payable on demand or at a future time."

Analyzing the instant case we can come to no other conclusion than that there was a pre-existing debt and this was the $870 paid by the Motor Car Company to the Colonial Finance Company in 10 monthly installments. In addition to this was the agreement to pay the remaining two installments which was done and the chattel mortgage cancelled by the Colonial Finance Company. Thereby the chattel mortgage obligation was extinguished and the note involved in this case took the place of that obligation.

At the time this question was first presented to Dr. Urich only 10 payments or $870 of the amount had been paid on the chattel mortgage obligation. So far as the Colonial Finance Company was concerned

this amount of the chattel lien was extinguished. The Motor Car Company had assigned the chattel mortgage and thereby released all interest therein. The Motor Company was liable on the note as an indorser. This would be a secondary liability. The mere payment of these monthly installments would not renew their lien under the chattel mortgage. Under the well recognized rule of subrogation a person's secondary liability to pay the obligation is entitled to be subrogated to the rights to all liens held by the creditor against the principal debtor. Subrogation does not attach from the mere payment but the right must be asserted by the party secondarily liable. This may be done either by taking an assignment or other means of transfer from the creditor or by action in court to have the right declared.

So when the 10 monthly installments had been paid the Motor Company held nothing as evidencing the obligation of Dr. Urich to them. They did hold the unquestioned right of subrogation equal to the amount they had paid. The Colonial Finance Company's lien had been reduced to the two unpaid notes of $87 each. The Motor Car Company never asserted their claim to subrogation. Neither did the title to the chattel mortgage note ever return to them either in whole or in part after they discounted to the Colonial Finance Company.

There can be no dispute that the Motor Car Company after making the monthly payments held a claim against Dr. Urich for the respective amounts as paid. Under this situation Dr. Urich's obligation to the Colonial Finance Company was being reduced month by month and his obligation to the Motor Company was being increased month by month. When Dr. Urich gave the note secured by Mr. Rookstool it took up the pre-existing debt represented by the monthly payments paid by the Motor Company to the Colonial Finance Company by virtue of their secondary obligation as indorser.

The question may be raised that the 10 monthly payments did not equal the balance due on the automobile and that therefore there would be a partial failure of want of consideration.

The answer is that there was the obligation to pay the remaining two installments by the Motor Company and under the undisputed evidence they did so pay and caused the chattel mortgage to be cancelled on December 16, 1930. Thereby the chattel mortgage indebtedness was extinguished.

The question as to whether or not the chattel mortgage note was actually returned to Dr. Urich becomes immaterial. The note as in all instances was only the evidence of the indebtedness. The uncontradicted evidence shows the chattel mortgage obligation to be extinguished. In this particular the instant case is to be distinguished from **State Savings and Trust Company v Grady, 30 Oh Ap, 385 (1 Abs 503)**. In the cited case and in the opinion, the court does refer to the fact that the creditor kept physical possession of the chattel mortgage, but this is only part of the sentence; the opinion further says that the bank peremptorily refused to give it up after the new obligation was given and thereafter made collections thereon. The mere retaining of physical possession alone would not be sufficient. It was the act of the bank in retaining it as an existing obligation that defeated their right to hold the second note. In any event, the cited case would not apply in the instant case for the reason that the plaintiff Motor Company did not possess or own the chattel mortgage obligation at the time of the execution of the new note.

The defendant Rookstool is shown to be an accommodation party in the execution of the note sued upon. This can in nowise alter the position as is stated in §8134 GC.

"LIABILITY OF ACCOMMODATION PARTY. An accommodation party is one who signed the instrument as maker, drawer, acceptor or indorser without receiving value therefor and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding the holder at the time of taking it knew him to be only an accommodation party."

On the question of consideration reference is also made to §8129 GC.

"PRESUMPTION OF CONSIDERATION. Every negotiable instrument is deemed prima facie to have been issued for a valuable consideration; and every person whose signature appears thereon to have become a party thereto for value."

Also §8131 GC.

"WHAT CONSTITUTES HOLDER FOR VALUE. When value at any time has been given for the instrument, the holder is deemed a holder for value in respect to all parties who became such prior to that time."

We find in the briefs of counsel much discussion on the burden of proof. We

think the law on this question is well defined but a further discussion can not be helpful since we base our conclusion upon the undisputed evidence and further giving to the testimony of Dr. Urich the fullest credit of which it is susceptible.

The cases cited by counsel for defendant in error are all readily distinguishable from the instant case. In several of the cases there is evidence of fraud known to the creditor and we have no such a situation in the instant case. In other cases the note in question was purely voluntary and not in payment of an antecedent or pre-existing debt. It is unquestionably true that where the pre-existing obligation is retained as such a new note attempting to cover the same obligation would be without consideration.

It is our conclusion that the judgment below should have been for the plaintiff and against the defendant Rookstool. The plaintiff should be restored to his position before the suspension of judgment and permission to defendant Rookstool to file answer and defend.

Counsel for defendant in error urges anew a question passed upon by this court during its April term. In the error proceedings in this court Dr. Urich was not made a party. Counsel for Mr. Rookstool interposed a motion that the proceedings in error be dismissed for defect of parties. That motion was argued orally and thereafter this court overruled the motion holding that the judgment still remained in effect as against Dr. Urich, and that he was an unnecessary party to this proceeding. At the present time counsel cites an additional authority being **Werk v Christy, 9 C.C., 439.** We have very carefully examined this case and in our conclusion it is to be distinguished from the instant case in that the proceedings in error were instituted by the principal on the note and the surety was not made a party. Under such a situation it is impossible to conceive of a liability against the surety without it also existing against the principal. As stated in the cited case the surety would be interested in having his liability follow the principal, if the principal was relieved the surety should be relieved also.

The case of **Neuberger et v Finney, Admr., 17 C.C., 215** first syllabus, we think is somewhat in point. At page 218 of opinion the court says:

"The judgment against the other parties did not affect him and it was not necessary that he be a party to the proceedings in error brought to reverse the judgment against them."

In the case of **Graphaphone Company v Slawson, 100 Oh St, 473** it was held that joint obligors were necessary parties in proceedings in error but a reading of pages 476 and 477 of the opinion will disclose that this holding was due to the peculiar facts of that case. On page 476 the court says:

"The two obligors not here parties were peculiarly interested in holding the defendant in error as contributor to any judgment which might be obtained and collected against them."

This is not the situation in the instant case.

We also refer to the case of **Lindeman v Euryrach, Sr., 21 Oh Ap, 314 (4 Abs 645)**, second syllabus:

"Liability in tort is not joint liability but is joint and several."

The cited case is to be distinguished from the instant case in that it was a tort action but we desire particularly to call attention to the third syllabus and also that part of the opinion wherein it states that if there is not a right to contribution, motion to dismiss proceedings in error will not be sustained because all parties were not brought in. This principle applies to the instant case. The defendant, Dr. Urich can in nowise be financially interested whether or not Carl Rookstool would be held or released.

In the instant case it is the surety who was relieved from the judgment in the court below. The principal interposed no defense. It frequently happens that a surety is not liable where the principal is. While it is true that the liability is joint and several in the instant case they are not so connected as to make one dependent upon the other.

We think that counsel for defendant Rookstool is unduly concerned as to the form of the entry in the court below wherein he thinks the action was dismissed not only as to the defendant Rookstool but also as to the defendant Dr. Urich. Regardless of the language of the entry it could not be given a wider import than the nature of the case would warrant. It would be giving a construction as not affecting the judgment against Dr. Urich since he had filed no answer and was making no complaint.

Costs will be awarded against the defendant Rookstool and entry will be drawn in accordance with the above opinion.

HORNBECK, PJ, and KUNKLE, J, concur.

## ON APPLICATION FOR REHEARING

Decided March 6, 1934

By THE COURT

The above entitled cause is now being considered on application of defendant in error for rehearing. This application for rehearing does not conform to the rules of practice as found in Volume 38, Ohio Appeals, immediately preceding page 1, under title "The Rules of Practice of Court of Appeals of Ohio."

Rule 8 prescribes the procedure on application for rehearing. The application must be filed within ten days after the decision is announced and copy must be served on opposite counsel; proof of service of copy must accompany application.

In the instant case the decision was released February 7. There is no proof of service of copy on opposite counsel. Our notes indicate that the application was not received within the ten days prescribed by the rules.

Of course, counsel will understand that the application for rehearing is not a prescribed procedure under the Code. It is only permitted under the rules of court. Such application is not a condition precedent to taking the case up to a higher court.

Notwithstanding the failure to comply with the rules as above indicated, we have examined the application but find no new or different proposition than was advanced at earlier hearings. The question was first based on a motion to dismiss and later the same question on the merits. We still adhere to our earlier decision.

HORNBECK, PJ, KUNKLE and BARNES, JJ, concur.